Good morning, Your Honors, if I may. Go ahead. Do you wish to reserve any time for rebuttal? Yes, I do. Two minutes? Two minutes. All right. Please state your name. I'm sorry. I'm Seymour Amster. I'm the attorney for the appellant in this matter. In reviewing the briefs, Your Honor, I feel that the vast majority of my issues have been briefed on this matter. I believe the only issue is would the letter have made a difference in cross-examination at this point. This is the letter which DiNardo wrote to his attorney, which said Murdoch had nothing to do with this crime, and neither did I. The neither did I is, again, I haven't seen the letter. And so anything I say about the letter, if it's wrong, I'm not trying to misrepresent. I'm kind of like in a dark room overhearing things. And Your Honors, I believe, have seen the letter. The neither did I is the big issue to me. If it says neither did I, I'm going to take your word for it, obviously. I felt that the way what the magistrate stated was I didn't commit a crime with Murdoch. And that's different than neither did I. So I'm not sure what the specific language is. I don't know if cross-examination would have made that more clear. Because if it's neither did I, no question, we've got evidence that he did, that DiNardo did commit the crime. But if he's saying I didn't commit the crime with Murdoch, that's different. It's admitting that he committed the crime, just not necessarily with Murdoch, and that's huge. The one thing that I do want to address that I don't feel that I was specific enough in this, in my briefs, is we have his testimony that was given at trial after he knows he's not going to have the life sentence anymore. The jury might have clearly said, okay, his testimony is suspect at this moment. He's got a motive to lie. But when he was originally contacted by the police at a time when he didn't know what might happen to him, he gives a statement that is incriminating against Mr. Murdoch. And that statement might have some trustworthiness attached to it, because it's a prior time before he cuts his deal. So the jury believes, okay, we've got the only statement before his deal is incriminating. And so being that, that's what we're going to deliberate on. Kennedy. I'm sorry. Kennedy. With due respect, you're arguing the case as if you were before a jury. The issue before us is, can you point to a Supreme Court case which establishes the constitutional right to breach the attorney-client privilege for purposes of confrontation and cross-examination, keeping in mind that the only one that came close to even considering it and then didn't consider it was the case arising out of the Vince Foster investigation? And what I believe, with all due respect, is I felt that the other panel made the decision that the issue is not that my issue now today is not can the Constitution, the Sixth Amendment, breach the attorney-client privilege, that that panel decided that, yes, the Sixth Amendment right is constitutional, the attorney-client privilege is statutory. So underneath the law of the case doctrine, the only issue now is, would this letter have made a difference? In other words, I don't think I need to step back. I think the prior panel of Judge Trout's opinion already made the decision that, yes, we do have a breach here. If we have something material, that that trumps the statutory right. So my only issue right now is, was this letter material or not? Okay? I understand your position. Okay. And so, and if the Court has a problem with that issue, I would suggest you look at the opinion. And I think the opinion well briefs the point. If, if, if, if, if,  the content of the letter was not subject to attorney-client privilege, if needed for confrontation purposes. Maybe. Let me put it the way that I, in other words, what is the letter material? Would it have made a difference? If the, if the attorney had this letter, would he have been able to utilize it in a way in cross-examination that would have aided the jury, different cross-examination, created a different testimony? Just a minute. Just a minute. I have two questions. My first question, I have to back up a little bit. Okay. Are you saying that the prior panel decided that the Supreme Court case law had already clearly established at the time of this trial that the Sixth Amendment right to confrontation can trump the attorney-client privilege under certain circumstances? Yes. And so the reason they ordered the letter to be examined because the courts had determined are these the kind of circumstances where that, that rule of, you know, trumping the privilege would apply? That's your position? That's my position. All right. All right. Now, so proceeding from there, then. So the next question is, then on remand, the district court got the letter and examined it. Now, the question is, right. Under the habeas standard of review, I mean, you, you know, you, you stated all different kinds of ways, you know, I don't know whether Laura could say, well, would it have done this, would it have done that? But the question is, as I recall now, did the failure to disclose the letter to the attorney have a substantial and injurious effect on the verdict? I think that's the question we have to answer, isn't it? I agree. All right. Now, what's your answer to that question? My answer to that is yes. And the reason why is the introduction of that letter would have changed the entire chemistry and tenure of the cross-examination. Number one, you now have a statement from DiNardo where he exculpates Murdoch. Okay? The question is, what happens when DiNardo is in front of a prosecutor? Mr. Mehta, when you say now, I mean, he was extensively cross-examined even without the letter, right? Okay. No. And this is, a lot of questions were asked. I grant you that. But he didn't make any, the attorney made no headway because he had no ammunition. And yes, he asked a lot of questions, and I feel I really briefed this well in my reply brief, but he doesn't get anywhere. Why doesn't he get anywhere? Because at every key moment, he needs the letter. DiNardo says, oh, I'm testifying now only because I want to be a good person, or that's one of the reasons why, because I feel bad about what's happened to the victims. With the letter, it would have shown, no, you were pressured. DiNardo denies or goes back and forth on the issue, was he pressured? But we had this hour and 15 minutes of no tape recording, which I think is critical. The letter really would have helped there. It would have shown that there was the potential for pressure. In other words, confronting DiNardo with the letter, what does he say? I'm either pressured when I wrote the letter, I was pressured when I was examined. Either answer he gives brings us to the point of what has been stated so well by the Ninth Circuit in the opinion on this case. When you combine falsehoods with the truth, then it is a very compelling testimony to the jury. And you can see from that letter, if the magistrate's right, that we have falsehoods and the truth, this is DiNardo's pattern. So no matter what, you can show that DiNardo lies by combining the falsehoods with the truth. And that in and of itself, if you get no more from DiNardo than the omission of the letter, this whole case is different. Because the deliberations are different, because of the cross-examination, because of the right to use that letter, you have a different case. And it might be one thing when you have a witness who's not too material to a trial, but this was the witness. And not only was this the witness, this was the snitch. And not only was this the snitch, this was the snitch that had every single motive to lie, to save himself from spending the rest of his life in prison. That's a huge... I've still got to get an answer. I'm sorry. I know all about the facts. I want to know about the law. Is there a Supreme Court case that says, my colleague said, that the right of confrontation trumps the attorney-client relationship? And if there is, give me the citation. And more importantly, give us the citation of Murdoch 1, where you say that that issue was decided. In my appellate's excerpt of record, volume 1, starting at page 29, Murdoch 1 states, the opinion of the prior panel is there. Okay? I can give you the citation, too, but I... The opinion of what? On this case, the opinion that the prior panel did when it remanded the matter back. Right. All right. What case did Murdoch 1 cite that answers Judge's question? Right. I understand. And you would have thought that last night when I reviewed everything, I would have thought of that question, so I'm trying to find it as quickly as I can. All right. The U.S. Supreme Court does not — I'm answering the questions. Does not specifically — does not specifically find the attorney-client privilege overruled, okay, under the specific concept. But generally, when you go to page 4245 and 4246 of the discussion... I have that. Go ahead. Okay. That's — that's where the panel is saying that the concept of the U.S. Constitution and a statutory, and going through the fact that the attorney-client privilege is only statutory and that it's not in the Constitution, we can then apply those U.S. Supreme Court cases for the Constitution that override a statute. I mean, the reality is this. Do we specifically need a U.S. Supreme Court case that — Yes. 2254d1 says we do. I know what you're going to jump at. Let me jump at what I'm going to say. Do we need a... I think the only case that might help you, and I haven't read it, is the Douglas v. Alabama, which was a different issue. But that might help you. We'll take a look at it. Yes. The one — I think you're talking about the one, the juvenile records. There was one that the — yes. And that's what I'm driving at. Because do we need a U.S. Supreme Court case statute by statute by statute? In other words, is what the Habeas Act says that every single State statute we need the U.S. Supreme Court to say for this right that, okay, the Sixth Amendment trumps it, and therefore we can have habeas granted? Or is it good enough that we have the general accepted policy that when we have U.S. constitutional right for any State statute, that's sufficient? Well, your right to confrontation and cross-examination is limited, for instance, under Federal Rule of Evidence 403, which is the weighing between prejudicial and time-consuming and relevant evidence. So there are a host of limitations to cross-examination which don't impinge on the constitutional right. The question is, is one of those the attorney-client privilege? I've asked you whether there's a clearly established Supreme Court case. The attorney-client privilege has been around for a long time, and the answer is no. And it isn't cited by Murdoch 1. Thank you very much. We'll give you two minutes for rebuttal. Please, the Court. Deputy Attorney General Rama R. Maleen, on behalf of Appelli, Roy A. Castro, and Mr. Warden et al., just picking up on the Court's last comment, at page 702 in the first decision by this Court, they specifically stated that they were addressing a situation whether the conference of this Court's first decision, that would be 365 F. 3rd, 699 at page 702. What case was that? That was this case the first time around. Oh, the prior case. Yes. The murder of Ray Castro. Correct, Your Honor. At page 702, the Court specifically stated that the U.S. Supreme Court has not addressed a situation where the attorney-client privilege and the confrontation clause were at issue. Well, let me throw a curve at you. Who has the right to claim the attorney-client privilege? The person who has the right to claim that privilege, as we argued in our first brief in this case, was DiNardo, the person who purportedly wrote the letter. Did he claim it? Well, his attorney claimed it on his behalf. Yeah, but did he claim it? I would assume. I would answer that yes, because his attorney claimed the privilege for him. I don't know where DiNardo, I assume he was in custody at the time that all these facts and circumstances were going down. He did testify at the trial. But prior to his testimony, his attorney asserted it on his behalf. Well, you know, I'm not so – I know it isn't a big issue, but it's bothersome as to whether or not the attorney-client privilege really applied at all. If it didn't, then we've got a straight confrontation clause and a harmless error issue. Your Honor, that would be correct if that was the case. However, the previous Court specifically stated that the district court was to examine the letter as if it was protected by attorney-client privilege and then balance that against the confrontation clause. Counsel, going back to that same page of the previous opinion in this case, right, on page 702. Yes. Your Honor, you're correct where you say – the panel says in so many words that, you know, we address a situation involving the confrontation clause and the privilege where there are odds. And then it says a set of facts the Supreme Court has not yet examined. But then in the very next sentence, the panel says, its precedents, however, clearly provide that evidentiary privileges or other state laws must yield, if necessary, to ensure the level of cross-examination demanded by the Sixth Amendment. Its precedents clearly provide. Now, here's my problem, and you can address this for me. I think that establishes the law of the case here. In other words, why would the prior panel have remanded this case back to the district court to examine the letter if it had not already ruled that, you know, the right was clearly established and, therefore, it had to be followed? Isn't that the law of the case? I would – Otherwise, you know, we're deciding the same question over. And what's the reason to send the case back to have the district court look at the letter? I would argue, Your Honor, I listened to the prior oral argument in this case just yesterday before coming here, the oral argument that's posted on this Court's website. And the Court in the first panel in this case was very interested in the contents of that letter. The Court had made a decision or had concluded that no one had reviewed that letter. So they were interested to see what was in that letter. I know, but there's no reason to review it unless there was some law that would support, you know, introduction of that letter, you know, as evidence, right? That's absolutely correct. And I argued that vigorously in the first argument. All right. So why did it make this statement and send the case back for the letter to be examined? In other words, don't we have to respect that decision? I would argue that respectfully, that they were wrong in the first decision, but that, no, that this Court can't. Well, we can't, you know, I mean, we can't second-guess that and just say, well, we're not going to follow that decision because they were wrong, right? Yes, this Court has to follow that because that was the decision of the first Court. And we had to follow it and the other side had to follow it. And in line with that decision was the district court's evaluation of that letter. The district court did a extreme detailed analysis of that letter and set forth the four factual assertions that it felt were important in the letter. That's a different – you're conceding the point that Judge Toshima made. The prior panel decided that the Confrontation Clause trumped the attorney-client privilege because it said the precedence of the Supreme Court indicate that. Now the issue is, on the second prong of Brecht v. Abramson, whether that was prejudicial. No. If I was unclear, no, I'm not conceding that. What I would say is that they said this specific issue has not been addressed by the United States Supreme Court. However, there have been instances where the United States Supreme Court says that other evidentiary privileges, not the attorney-client privilege, but other evidentiary privileges would trump in certain situations the Confrontation Clause. It didn't say other evidentiary privileges. It said clearly present evidentiary privileges. It didn't say other ones. Evidentiary privileges must yield, right? It does say that, but I believe you have to read that in context with the preceding sentence, which says that this specific situation has not been addressed by the U.S. Supreme Court. That is the debt. I see. You didn't put those two sentences and you say they really didn't decide this issue because of the two sentences. You can't read one sentence without the other one. That would be my argument, Your Honor. If I could just pick up on a prior point. I just want to ask just one question. I take it the letter is somewhere, we have the letter somewhere in the records, don't we now? It's never been made part of the record. I've never seen the contents of the letter. I thought the magistrate had seen the letter. The magistrate did see the letter. Well, if the magistrate saw the letter, then it must be, isn't it part of our record? I would presume it is filed under seal. The answer is, the answer is I have read it. The answer is what? I have read it, the letter. Oh, okay. So it's somewhere. It's an answer. It's somewhere. But if I could just pick up on a previous point, since there is, and this goes to what this Court has been discussing, is that if there is no Supreme Court precedent on this issue, this Circuit has said that no Supreme Court precedent under Havia's review, State courts do not misapply Supreme Court law because there is no Supreme Court precedent. You see, the problem in this case is, and we see it in so many cases, I mean, there is Supreme Court precedent, you know, at a certain level of generality. The question is, how specific that prior precedent has to be, right? And I think that's what we have to struggle with. And the subservient question of, you know, did the prior panel already decide that issue for us? And do you draw a difference or distinction between other evidentiary privileges, such as the privilege of marital communication, the privilege of juvenile records not being revealed, and the attorney-client privilege? Is there a hierarchy of statutory and common-law privileges with which the Sixth Amendment allows some to be proof from its piercing and others not? I have not studied the case law in those areas, but I would just, based on my study of this case, that courts do tend to hold the attorney-client privilege above all other privileges. They're made up of lawyers. Yeah. And, you know, we have to provide for that free flow of discussion between clients and their attorneys, and that's why they hold those. In fact, there is one Supreme Court case that talks about that privilege as being inviolate. So it is, I would argue, in the hierarchy of privileges up there, if not the top privilege. But I want to go back to my fallback point, that the district court did a detailed analysis of this letter. So even if we talk about applying Supreme Court precedent, if there was a Supreme Court precedent in this case, they did a detailed analysis and said that based on the factual assertions in the letter, they were proven to be either demonstrably false or conflicted with other evidence. Based on its reading of the letter, the district court, the magistrate judge, found that there was no violation of the confrontation clause because the letter was, according to the district court, three-and-a-half parts of it was false. The only remaining part, that Petitioner did not commit a crime, that was the issue to be decided by the jury. They said that was the only thing left open in that letter that could have been used by the defense counsel in cross-examining DiNardo. Kennedy. Do we have to give deference to that finding by the district court without the opportunity of the appellant to question because he hasn't seen the letter? Well, this Court, the Ninth Circuit and all other circuits say that factual findings by district court are to be reviewed for clear error. And that Even when the appellant hasn't seen the facts? The appellant has seen the facts as much as I've seen the facts, and those facts are the factual assertions set out in the letter as deemed by the district court. And this Court has also apparently one member of the panel has read the letter at least. Okay. Thank you. And I would like to conclude with the, even if we talk about there being a Supreme Court president or the absence thereof and the application of the precedent that is there to the facts of this case, which the district court found there was no violation of the Confrontation Clause, that under the harmless error analysis done by the district court, which was also very detailed, the Petitioner in this case had a very vigorous cross-examination of DiNardo. The jury would have been aware of any bias or favoritism that was given to DiNardo in this case, and that his bias was totally exposed, that the value of this letter or excluding this letter did not harm Petitioner, and that appellant should be denied or Petitioner should be denied habeas relief on those three grounds. And I see I exceeded my time, unless there's any questions I would just submit. Thank you very much. Thank you. If I may. Right. DiNardo did not claim the privilege. Only his attorney did it for him. There was never a hearing if he wanted the privilege. The judge basically claimed the privilege for him. That's what happened in the trial court. Isn't that the obligation of an attorney unless he has contrary instructions by his client? He wasn't a part of the proceeding at that point. It was Murdoch's trial, not DiNardo's. No, he does not at that point, because if I may. An attorney must claim the attorney-client privilege when he doesn't have any instructions from his client. But it wasn't addressed solely to DiNardo's attorney. It was addressed to DiNardo's attorney and Murdoch's attorney. That's what the matter is right now. Well, let me ask this question. What was DiNardo's attorney doing in the courtroom? He was called in to bring the letter by the judge, instructed him to do it. The letter he had, and the court instructed him to come in. Otherwise, he wasn't there. All right. So he had to do so. I think, you know, Judge Bitt is correct. I mean, his job is to invoke the privilege on behalf of his client, isn't it? If he's told you have to produce this letter, he says, well, I object. I want his privilege. That's his job. Okay. Let me concede that for a second. I don't agree, but I'll concede that and move on since I have limited time. But let me ask you this question. How is it fair when you enter into a contract with the prosecution to hold the whole truth, and you've entered into that agreement, and now you've got something that disagrees with your testimony, but you're going to assert that privilege so you don't have to bring in the whole truth? Isn't that implied in that contract? When I've entered into an agreement with the prosecution that I'm going to come and testify. No, you're not even arguing the issues in this case on rebuttal. You ever heard the expression, don't snatch defeat from the jaws of victory? I'm not saying that's so, but to argue other things here on rebuttal just isn't very good tactics. I will stop as I do in my arguments with my wife. I'm trying to read. I'm just trying to answer questions that I thought were out there. Oh, go ahead. I'm not stopping you. I know you're not, but you're – I'm listening. How do you answer the contention of the appellee that the Supreme Court, A, has not determined the issue as to whether the Sixth Amendment confrontation right trumps attorney-client privilege, and neither did the prior panel of this Court because when you read the portion that has been read over and over again, it is ambiguous as to whether evidentiary privileges or other state laws includes attorney-client privilege. I believe the other panel did. I don't believe there's a U.S. Supreme Court case specifically on the point. I do believe that the attorney-client has – Do you understand that every time that any evidentiary privilege or other state law has been a bar to cross-examination, the Confrontation Clause has always trumped it? Because that's the general rule that you say that Murdoch won in this Court established. If it's going to restrict the right to cross-examination and the witness is material, I think you've got to look at how material the witness is, yes. Okay. And I think if you have a minor witness, that's a different story. When you have the witness and a snitch, I think then you have very – if you've got any evidentiary privilege under state, it's gone. And that's what we had here. So that's my answer on that point, yes. And I do believe the panel did that. That's why they sent it back, to look at the letter. Otherwise, we have a tempest in a teapot.  And even the magistrate said the letter is exactly how the Ninth Circuit felt it would be. That's right there in the reports and recommendations. Then the magistrate goes on to his opinions. And this Court is not governed by it. This is a mixed legal and facts situation. This Court can do it de novo. This Court can do as good of a job as the magistrate by looking at the letter. All the magistrate did is look at the letter. This Court can do the same thing. And it is here for the law. Kennedy. Okay. Now, Kerry, I don't go further. Look at the letter for what purpose? To determine if it would have aided in the cross-examination. And my whole point to determine whether or not Murdoch's Sixth Amendment confrontation right was violated. Correct. By the nonproduction of the letter. Correct. All right. So he looked at the merits of the letter under the assumption that the Sixth Amendment trumps the attorney-client privilege. Right. Right. And my whole point is the letter is the only evidence that he either said that Murdoch was not involved in it or that he was a liar. And either one works for cross-examination. You confront the witness, you've lied before. So either way it is, and again, I haven't seen the letter, it helps on cross-examination because this jury believed he never lied before. But with the letter, we know he lies before. Or this jury — I just want to ask one question. Does State courts ever look at harmless error in this case? No. I mean, I don't — We're looking at it. We're looking at it for the first time, the error, whether it was harmless or not. And I assume we have to apply the Brecht rule, don't we, that whether — if the admission of this letter would have changed the position of the jury in this case. That's not the exact wording of Brecht, but that's the idea. Yes. Yes. That's exactly right. And that's what the prior panel said. The court of appeals never looked at this underneath that concept, and that's why we can look at it. Thank you very much. Thank you. At this time, we're going to take a ten-minute break in the proceedings. We'll be back after ten minutes.
judges: Bright , Tashima, Bea